DAVID D.  LIN (DL-3666)
David@iLawco.com
JUSTIN MERCER (JM-4514)
Justin@iLawco.com
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY  11201
Telephone:  (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiff*
PLOT COMMERCE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLOT COMMERCE,<br><br>                         *Plaintiff,*<br><br>    -against-<br><br>TICKETNETWORK, INC. and<br>TICKET SOFTWARE LLC d/b/a<br>TICKETNEWS,<br><br>                   *Defendants.* | Civil Action No.: 15-cv-1372<br><br><br><br><br>**COMPLAINT** |

Plaintiff PLOT COMMERCE d/b/a Charged.fm ("Plaintiff" or "CHARGED.fm"), by and through its undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for recovery of damages arising from blatant acts of unfair competition and deceptive trade practices in connection with the publishing of a defamatory "news article" on a website owned and operated by Defendants; to enjoin Defendants from future wrongful conduct; and for defamation/trade disparagement under New York common law.

## PARTIES

2.      Plaintiff is a corporation duly organized and existing under the laws of the State of Nevada, also doing business in the State of New York as "CHARGED.fm," with its principal place of business in Brooklyn, New York.

3.      Upon information and belief, Defendant TicketNetwork, Inc. ("TicketNetwork") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 75 Gerber Road East, South Windsor, CT 06074.  Upon further information and belief, TicketNetwork is the 100% owner and operator of Ticketnews.com. TicketNetwork is engaged in commerce in the United States, including within this judicial district.

4.      Upon information and belief, Defendant Ticket Software, LLC, also doing business as "TicketNetwork" and "TicketNews," ("Ticket Software," and collectively with TicketNetwork, "Defendants") is a limited liability company duly organized and existing under the laws of the State of Connecticut, with its principal place of business at 75 Gerber Road East, South Windsor, CT 06074. Ticket Software is engaged in commerce in the United States, including within this judicial district.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); for defamation under New York common law; and for unfair or deceptive trade practices under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g(a).  This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, and 1338.

6.     The Court also has jurisdiction over this action as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7.     This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory law of the State of Connecticut and common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Defendants further subjected themselves to this Court's jurisdiction by invoking the benefits and protections of this State in an attempt to cause harm within the State of New York.  Defendants' false and defamatory posts, made between February 11, 2014 and November 18, 2014, which referred to Plaintiff as a perpetrator of "fraud" and mentioned Plaintiff's website <www.charged.fm>, which prominently displays the words "in Brooklyn, New York" across the bottom banner of each page. Upon information and belief, Defendants did this to optimize search engine results so that individuals searching for Plaintiffs in New York would see Defendants' false and defamatory post, thus causing Plaintiffs harm in New York.  Thus, personal jurisdiction over Defendants is also proper in New York pursuant to New York Civil Practice Law and Rules § 302(a).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the threatened and actual harm to Plaintiff occurred in this District by reason of Defendants' conduct as alleged below. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1391(d) because Defendants are aliens.

## FACTUAL BACKGROUND

### The Parties and the Secondary Ticket Market

10.     PLOT COMMERCE d/b/a Charged.fm ("Plot Commerce" or "CHARGED.fm")

is a corporation duly organized and existing under the laws of the State of Nevada, with its

principal place of business in Brooklyn, New York.

11.     Plot Commerce's business involves, *inter alia*, partnering with its exclusive

network of professional ticket sellers, commonly referred to as the "secondary ticket market," to

offer major sports and concert tickets directly to fans.  That network and platform is called

"Charged.fm."

12.     "Charged.fm" is also a domain name owned by Plot Commerce and an assumed

name under which Plot Commerce is authorized by the State of New York to conduct business.

13.     Plot Commerce is also the owner of the trademark "CHARGED.fm®," and

design mark, **CHARGED.fm**⚡  USPTO Reg. No. 4,149,457 in International Class 035

for "Online marketplace for sellers and buyers of tickets for sporting events, musical concerts,

and other entertainment events" (the "CHARGED.fm® Mark").

14.     CHARGED.fm was started for fans to have a place to go get the best deal on

tickets.  CHARGED.fm is a leading social commerce and advertising platform that allows

anyone to discover, share, create, and sell tickets for any event, anywhere.  In short,

CHARGED.fm is a ticket marketplace.

15.     Now, CHARGED.fm empowers everyone, including artists, fans, venues or

events of any size, with the most powerful tools to buy and sell their tickets online.

16.     CHARGED.fm was developed as a powerful alternative to competitors' event ticketing fees. Unlike other ticket sites, CHARGED.fm offers all kinds of tickets.

17.     Since its establishment, CHARGED.fm has been recognized in the industry as the safe and secure place to go for the widest range of events at the lowest prices.

18.     CHARGED.fm is also a leading social commerce and advertising platform that allows anyone to discover, share, create, and sell tickets for any event, anywhere.

19.     As a result, Plot Commerce/CHARGED.fm's ticketing platform grossed nearly $17 million dollars in revenue in 2014.  In addition to CHARGED.fm, Plot Commerce's business also includes website and mobile application development.

20.     As a part of its lower-priced business model, CHARGED.fm has developed a special pricing algorithm that dynamically prices its tickets.  By utilizing CHARGED.fm's intellectual property to sell tickets and promote events at lower costs, CHARGED.fm's network of sellers and promoters are able to pass those savings on to consumers when they buy tickets.

21.     CHARGED.fm also maximizes ticket sales unlike any ticketing system in the industry by utilizing exclusive seller tools, like PRIME™ total box office software—CHARGED.fm's innovating ticketing platform for venues that allows customers and venues to connect in new ways— and viral marketing techniques.

22.     As a result, CHARGED.fm has developed a reputation in the industry as not only the low-priced leader in sales of event tickets, but also as a trusted destination in the sometimes-shadowy world of ticket reselling.

23.     However, CHARGED.fm's business model does not rely on low prices alone. Safety, security, reliability and prompt customer service have become hallmarks of Plaintiff's reputation with consumers in the secondary ticketing industry.

24.     Consumers return to Plaintiff's website and select Plaintiff's tickets, because they can consistently expect to find tickets from CHARGED.fm for the most events, can compare CHARGED.fm's prices with its competitors listed on other sites, and know that CHARGED.fm stands behind its ticket sales with a money-back guarantee.

25.     Thus, false information about CHARGED.fm's business has a negative impact not only on CHARGED.fm's revenues, but also on CHARGED.fm's good will and reputation with consumers.  If consumers see false information about CHARGED.fm on the Internet when they return to purchase tickets, they assume CHARGED.fm's established reliability is questioned and detrimentally affected.

26.     Defendants are all involved in the secondary ticket market.

27.     The secondary ticket market exists mostly online.  The vast majority of tickets available for sale on the secondary ticket market are held by professional ticket brokers and/or networks of ticket brokers who obtain tickets from a variety of sources, with the intent to resell. The secondary ticket market generates billions of dollars in annual revenues.

28.     Defendant TicketNetwork has operated as one of the largest ticket resale marketplaces in the United States and sells a substantial amount of tickets, either directly or indirectly, in the states of Connecticut and New York, and within this judicial district.

29.     Upon information and belief, unlike CHARGED.fm, Defendant TicketNetwork does not provide ticketing services for the "primary ticket market" (in which consumers purchase tickets directly from either a venue box office or from a ticket service, like Ticketmaster®) and does not contract with any venues or promoters to provide ticketing services on their behalf.

30.     Upon information and belief, Defendant Ticket Software is the operating arm of TicketNetwork. Ticket Software is a wholly owned subsidiary of TicketNetwork.

6

31.     Due to TicketNetwork's advertising and its growth in the industry, ticket buyers and ticket brokers have come to accept TicketNetwork as a viable alternative to the major secondary ticket market players like StubHub and eBay.

32.     As a result, emerging secondary ticket marketplaces like CHARGED.fm are compelled to pay the price of entry to TicketNetwork's "web services" in order to compete with the likes of StubHub in the secondary ticket market.

33.     Defendants own and operate the website <www.Ticketnews.com> ("Ticketnews.com"), which purports to provide "comprehensive news coverage and market analysis for and about the ticketing industry."  Defendants' Ticketnews.com further claims that it is "the only national news source that reports exclusively on the ticketing sector," and that it receives "more than 100,000 unique visitors each month."

**Defendant's Wrongful Conduct**

34.     On or about early 2014, in an intentional effort to divert business away from Plaintiff and toward Defendants, and to cause injury to Plaintiff, Defendant began to post defamatory statements about Plaintiff on Ticketnews.com.

35.     Specifically, on or about February 11, 2014, Defendants authored a harassing and defamatory "press release"-type entry on Ticketnews.com entitled "'Charged' With Fraud?" (which, until recently, was accessible to the public on the Internet via Ticketnews.com), accusing Plaintiff of being a perpetrator of the serious crime of "fraud," misleading ticket brokers with false promises of payments and absconding with the funds received from the ticket orders (the "Defamatory Article"). A printout of the Defamatory Article is annexed hereto as **Exhibit A**.

36.     The Defamatory Article, Plaintiff later came to realize, was part of the charade orchestrated by Defendants to suggest that Ticketnews.com was an independent entity.

37.     Upon information and belief, Defendants conceal the true identity of Ticketnews.com so as to maintain its farce to the public that it operates a neutral "ticket industry news site," when it really is a ticket marketplace itself.

38.     Defendants authored the entry in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiff. See Exhibit A.

39.     The Defamatory Article goes on to imply that Plaintiff is not a reputable website for ticket sellers, and proclaim Defendant TicketNetwork is, in order to induce Plaintiff's partners and customers to stop doing business with Plaintiff.   See Exhibit A. The Defamatory Article contains links to Defendant TicketNetwork's sales website <www.ticketnetwork.com> ("TicketNetwork.com") within the entry, urging ticket brokers and customers to visit Defendants' website to conduct business. See Exhibit A.

40.     Upon information and belief, Defendants generate income via advertising revenue based on traffic to its website Ticketnews.com and via ticket sales on TicketNetwork.com.

41.     The statements in the Defamatory Article are knowingly and materially false, and were made to defame Plaintiffs and drive traffic to Defendants' websites Ticketnews.com and TicketNetwork.com in an effort to increase advertising revenue and ticket sales.

42.     Defendants made the statements in the Defamatory Article as part of an intentional, malicious and systematic campaign to interfere with Plaintiff's contractual relationships with its customers and partnerships with ticket brokers, and upon information and belief, to wreak havoc on Plaintiff's business by inducing Plaintiff's customers and partners to cease doing business with Plaintiff.

43.    The ostensible purpose of Ticketnews.com is to provide "comprehensive news coverage and market analysis for and about the ticketing industry."

44.    In fact, Ticketnews.com is used by Defendants to publish falsehoods about Plaintiff, one of Defendants' competitors.

45.    Effectively, Ticketnews.com is an advertising platform for Defendants, masquerading as a neutral news resource.

46.    Upon information and belief, hundreds of thousands of people each month viewed the Defamatory Article, which has a significant influence on consumers' perception of Plaintiff and Plaintiff's business.

47.    Many of Defendants' statements are false and completely fabricated.  They have been published for the overt purpose of destroying the reputation of Plaintiff.

48.    Plaintiff did not become aware of the Defamatory Article until on or around November 18, 2014, more than 8 months after the statements were published, when several ticket brokers and customers referenced the article as the reason why they either refused to start and/or continue doing business with Plaintiff.

49.    After the Defamatory Article was published, but before Plaintiff was notified about it and/or discovered it online, on or about April 28, 2014, Plaintiff and TicketNetwork entered into an agreement entitled "TicketNetwork Data Sharing Agreement for Mercury Web Services" (the "Agreement"). Under the Agreement, Plaintiff would list ticket inventory from TicketNetwork's Mercury Web marketplace in exchange for a fee for each time a user bought a ticket.  In less than eight months under this Agreement, Plaintiff paid TicketNetwork, via its affiliate Ticket Software, more than $ 7.6 million dollars.

50.    Upon information and belief, and unbeknownst to Plaintiff, Defendants used the Defamatory Article to push business away from Plaintiff such that its options in the secondary ticket market would be limited.  At the time of entering into the Agreement and for many months thereafter, Plaintiff was unaware of the Defamatory Article.

51.    In effect, Defendants published the Defamatory Article to damage Plaintiff's reputation in the industry enough that it was forced to do business with the industry's largest player, TicketNetwork, and compelled to pay the cost of entry into TicketNetwork's marketplace by entering into the Agreement.

52.    Upon information and belief, TicketNetwork exercises complete control over Ticketnews.com to chose what information to publish, and a substantial amount of control over a significant portion of professional ticket brokers in the secondary ticket market.   Upon information and belief, TicketNetwork used its control over one of the most visited media outlets in the ticketing industry to manipulate public and industry perception about Plaintiff, to Plaintiff's detriment and to its benefit.

53.    The Defamatory Article references certain of Plaintiff's former brokers and/or customers who have ceased doing business with Plaintiff.

54.    Most, if not all, consumers who purchase event tickets through Plaintiff or Defendants' websites begin their ticket search using an Internet search engine such as Google.

55.    The Defamatory Article was available on such search engines until on or about November 18, 2014, when Plaintiff contacted Defendant TicketNetwork demanding it print a retraction.

56.    Defendant TicketNetwork did not print a retraction but agreed to remove the Defamatory Article.

57.    However, the Defamatory Article's headline is permanent and still available online; i.e. while withdrawn by Defendants, it is still available in byline form, and may only be de-indexed from search engines.

## FIRST CAUSE OF ACTION
**[False Representation of Fact under Lanham Act, 15 U.S.C. § 1125(a)(1)(B)]**

58.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth here.

59.    At all times relevant hereto, the federal Lanham Act prohibited misrepresentations in "commercial advertising or promotion" concerning "the nature, characteristics, [or] qualities" of another's goods.  15 U.SC. § 1125(a)(1)(B).

60.    Upon information and belief, by posting its Defamatory Article, and by offering to speak to Plaintiff's customers and potential customers about Plaintiff's alleged wrongdoing, Defendant intended to use its defamatory statements as a means to generate business by turning customers away from Plaintiff, and directing them to Defendants' website TicketNetwork.com to engage in commercial transactions and further business.

61.    Defendants conspired to harm Plaintiff's reputation, business prospects, and trademark by publishing false, misleading, and libelous statements about CHARGED.fm and CHARGED.fm's products and services in the Defamatory Article.

62.    The misleading or untruthful statements about Plaintiff have been made for the purpose of commercial advertising or promoting Defendants' goods, services, or commercial activities.

63.    Defendants' "Charged With Fraud?" statement falsely asserts Defendant's service superiority specifically over Plaintiff's service.

64.    Defendants made the statement in commerce and in the context of commercial

advertising.

65.     Specifically, the Defamatory Article is commercial speech because it was posted on Defendants' *own website* Ticketnews.com, and advertised TicketNetwork's services over Plaintiff's within the article itself.

66.     Defendants' false and/or misleading statements of fact about CHARGED.fm and CHARGED.fm's products and services are likely to influence consumer purchasing decisions in that they mislead and confuse consumers into believing that Plaintiff's products and services are inferior, not reputable and imbued with criminal activity, i.e. "fraud."

67.     Plaintiff has been and, unless enjoined, is likely to continue to be injured as a result of Defendants'' false representations.

68.     These acts and others stated above constitute a pattern of unfair competition, entitling Plaintiff to the recovery of compensatory and punitive damages.

69.     By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover Defendants' profits, actual damages and the costs of action.

70.     This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**
**[Unfair Trade Practices in Violation of CUTPA, Gen.Stat. § 42-110(b) *et seq.*]**

71.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth here.

72.     At all times relevant hereto, the CUTPA stated  "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

73.     Through its false and misleading representations about Plaintiff's goods and/or

services, Defendants are knowingly and intentionally misrepresenting the nature, characteristics, and qualities of Plaintiff's goods and services.

74.     As stated above, Defendants' conduct unlawfully permits Defendants to use and to benefit from the good will and the reputation earned by Plaintiff.

75.     Defendants operated from Connecticut.

76.     A portion of the acts and practices alleged in this Complaint emanate from Connecticut, are directed at consumers in Connecticut and New York and affect ticket sales at venues in Connecticut and New York.

77.     Plaintiff has suffered direct and ascertainable damages as a result of Defendants unlawful acts or practices.

78.     Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure Plaintiff, reap unjust enrichment and harm the public interest.

79.     These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiff to the recovery of compensatory and punitive damages.

### THIRD CAUSE OF ACTION
### [Common Law Defamation Per Se and Trade Libel]

80.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth here.

81.     Defendants have intentionally made knowingly false statements of fact about Plaintiff on Ticketnews.com.

82.     These statements were made maliciously and willfully, and were intended to cause harm to Plaintiff's business and reputation.

83.     The aforementioned statements were false when made and Defendants knew or

13

should have known that the statements were false when made.  The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiff.

84.     The aforementioned statements where made of and concerning Plaintiff, and were so understood by those who read Defendants' publication of them.

85.     Among other statements, Defendant falsely accused Plaintiff CHARGED.fm: of stealing money from ticket brokers, of making false statements about payments to its customers, and being a perpetrator of the crime of "fraud."

86.     Defendants' false statements of fact tend to injure Plaintiff in its business trade and/or profession.

87.     These statements were false, and were published to third parties in this district and across the Internet.

88.     Upon information and belief, the Defamatory Article's headline is permanent and still available online, i.e. while withdrawn by Defendants, it is still available in byline form, and may only be de-indexed from search engines.

89.     As a result of Defendants' acts, Plaintiff has suffered irreparable damage to its reputation and further damages in the form of lost sales and profits, in an amount to be determined at trial.

90.     As a result of the willful and malicious nature of the defamation, Plaintiff is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants awarding Plaintiff:

1.      actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to Defendants' violation of the Lanham Act under 15 U.S.C. § 1125(a)(1)(B);

2.      actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to Defendants' unfair trade practices under Connecticut statutory law;

3.      actual damages in an amount to be determined at trial, but in no event less than $1,000,000, due to commercial defamation and trade libel, and an order directing Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such defamatory articles;

4.      exemplary or punitive damages in an amount appropriate to punish Defendants and to make an example of Defendants to the community;

5.      a Permanent Injunction enjoining and restraining Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from disparaging or otherwise posting defamatory comments about Plaintiff;

6.      That the Court issue an Order at the conclusion of the present matter directing Defendant to undertake such remedial efforts as the Court deems necessary to restore Plaintiff's reputation;

7.      attorney's fees and costs; and

8.      such other relief as the Court deems just and equitable under the circumstances.

15

Dated: Brooklyn, New York
       March 17, 2015

                              LEWIS & LIN, LLC


                              By:  */s/  Justin Mercer*
                              David D. Lin, Esq.
                              Justin Mercer, Esq.
                              45 Main Street, Suite 608
                              Brooklyn, NY 11201
                              Tel: (718) 243-9323
                              Fax: (718) 243-9326
                              Email: David@iLawco.com
                                      Justin@iLawco.com

                              *Counsel for Plaintiff*
                              PLOT COMMERCE